# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CAROLE F. DIDWAY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-14-191-SPS ) |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Carole F. Didway requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423

(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: 1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on October 16, 1952, and was sixty years old at the time of the most recent administrative hearing (Tr. 326). She has completed one year of college, and has worked as an assistant manager and bottling line attendant (Tr. 111, 317). The claimant alleges an amended onset date of October 16, 2007, due to bi-polar disorder, depression, back trouble, and thyroid trouble (Tr. 106).

## Procedural History

On July 25, 2006 the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Lantz McClain held an administrative hearing and determined the claimant was not disabled in a written decision dated August 2, 2009 (Tr. 11-19). The Appeals Council denied review, but on appeal this Court reversed the decision of the Commissioner in Case No. CIV-11-067-KEW and remanded the case for further proceedings on July 24, 2012 (Tr. 381-394). In the interim, the claimant filed a subsequent application for supplemental security income benefits under Title XVI, and ALJ Osly F. Deramus determined that the claimant was disabled beginning September 17, 2009 (Tr. 375-380). Based on this Court's remand order and ALJ Deramus's award of benefits beginning September 17, 2009, ALJ Doug Gabbard, II, held a second administrative hearing as to the relevant period of October 16, 2007 through September

16, 2009. He then determined in a written decision dated August 2, 2013 that, during the relevant period, the claimant was not disabled (Tr. 304-319). The Appeals Council then denied review, so ALJ Gabbard's August 2, 2013 written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she must avoid exposure to dangerous heights, moving mechanical parts and should not be required to read small print. Due to psychologically-based factors, he found she could perform unskilled work (which needs little or no judgment to do simple duties that can be learned on the job in a short period of time) where supervision is simple, direct and concrete, interpersonal contact with co-workers is incidental to the work performed, like assembly work, and she would have no dealings with the public (Tr. 311). The ALJ then concluded that the claimant was not disabled because she could return to her past relevant work as a bottling line attendant, or alternatively, that there was work in the regional and national economy that she could perform, *e. g.*, housekeeping cleaner and hand bander (Tr. 318).

## Review

The claimant contends that the ALJ erred: (i) by improperly finding she could return to her past relevant work, (ii) by failing to formulate a hypothetical to the

-4-

vocational expert (VE) that included all of her impairments, and (iii) by failing to properly assess her credibility. The Court finds these contentions unpersuasive for the following reasons.

The ALJ found that the claimant had the severe impairments of degenerative disc disease of the lumbar spine, affective mood disorder, and substance abuse disorder, as well as the nonsevere impairments of congestive heart failure, history of paroxysmal atrial fibrillation with atrial tachycardia, folic acid deficiency, abnormal liver enzymes, urinary tract infection, thrombocytopenia, cholelithiasis, low magnesium, chronic microvascular changes in the white matter of her brain, and hypertension (Tr. 307-308). He also stated that the claimant had no work-related limitations with regard to her nonsevere impairments (Tr. 309). She was generally treated at Muskogee Immediate Care, Inc., for impairments that included alcohol withdrawal, UTIs, and medication management for anxiety and depression (Tr. 262-289). The medical evidence reflects that Dr. Mohammed Quadeer conducted a physical examination of the claimant on October 24, 2006 (Tr. 226). He noted, *inter alia*, that she had full grip strength, her knees were stable in all range of motion exercises, the lumbar-sacral spine was tender at the level of L5-S1 with full range of motion, and straight leg raising was negative (Tr. 228). He assessed her with bipolar disorder (noting she was advised to take her medications but had been out for the preceding few weeks), past history of suicidal ideation when she was beaten by her husband (16 years earlier), history of hepatitis C, and a past history of drug and alcohol abuse (Tr. 228-229).

Dr. Theresa Horton, Ph.D., conducted a mental status examination of the claimant on October 28, 2006. Dr. Horton found that her thought processes were "quite tangential," but that she could become organized and goal-directed with prompting, and her mood was predominantly anxious, hypomanic, and depressed (Tr. 237-238). Her recall and memory were intact, but concentration was poor, and Dr. Horton assessed her on Axis I with bipolar disorder, Type II, Mixed (predominantly hypomanic), and alcohol dependence (Tr. 238). Her prognosis included notations that the claimant did not ever follow through or take medications consistently, that her hypomania appeared to have existed since late adolescence, and that she had a history of impulsive decision-making, grandiose ideas and thoughts, and irritability in addition to depression (Tr. 238-239). Dr. Horton believed she would benefit from returning to treatment for medication management and counseling (Tr. 239).

Dr. Karen Kendall reviewed the claimant's record and determined that the claimant had moderate limitations in all three areas of functional limitation, and one or two episodes of decompensation (Tr. 252). She stated, "Clmt has access to meds and care that have improved her condition in the past but chooses not to be compliant with care" (Tr. 254). She then completed a mental RFC assessment, indicating in Section I that the claimant was moderately limited in the ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, and respond appropriately to changes in the work setting (Tr. 256-257). She stated in Section III that the claimant was able to perform simple and some repetitive more complex tasks under

ordinary supervision, able to interact appropriately for incidental work purposes, and able to adapt to some work change (Tr. 258). This was affirmed as written, by Dr. Bernard Pearce (Tr. 260).

On September 5, 2008, Dr. Donald M. Elgin of Muskogee Immediate Care, Inc., sent a letter indicating that the claimant had recently been in the hospital and that her discharge diagnoses included: alcoholism and hallucinations, congestive heart failure, history of paroxysmal atrial fibrillation with atrial tachycardia, as well as folic acid deficiency, history of abnormal liver enzymes, UTI, thrombocytopenia, and cholelithiasis. He indicated that her brain scan showed chronic microvascular changes in the white matter of her brain, and that she was on antihypertensives for blood pressure control (Tr. 261). He then asked that she be considered for disability based on her record (Tr. 261).

At the September 8, 2008 administrative hearing, the claimant testified as to her alcohol use that she had quit before and "I know that that's a strong possibility that I could be sober again" (Tr. 26). As to her memory and concentration, she stated that she sometimes forgets what day it is and will go from one room to the next and not remember what she went in there for (Tr. 28-29). She said that, as far as concentrating for two hours, she did not like to be idle, so during a two-hour movie she might get up to get water or put clothes in the dryer, and that she also took care of domestic tasks for her parents (Tr. 29). She testified that she could sit longer than she could stand or walk, and that she typically sits on her couch during the day and that her feet would "probably" be up about half the day (Tr. 31-33). She testified that she struggled to carry a 24-pack of

bottled water (Tr. 34). She testified that there are days she does not leave her house due to physical or psychological problems, which are about half the days in a typical month (Tr. 36). At the second administrative hearing, held July 15, 2013, the ALJ questioned the claimant about her past work (Tr. 327-339). As to her work as a bottling line attendant, she stated that she "had to make sure that one didn't fall to block the other ones from going through or something, and lots of broken glass to sweep up, cleaning, sorting out, and machines and stuff. Just a little bit of kind of odd jobs, everything. I can even drive a forklift" (Tr. 336). In response to questioning from the ALJ and the claimant's attorney, the VE testified that the claimant performed her work as a bottling line attendant at the medium level, but that it was classified in the DOT as a light job (Tr. 348, 351-352).

In his written opinion, the ALJ summarized the claimant's hearing testimony from both hearings, as well as the medical evidence in the record. He discussed the consultative examiner reports, as well as treatment records from her physician, noting that she had reported being non-compliant with her medications (Tr. 313-314). He further noted that the claimant received unemployment benefits after the original alleged onset date of March 16, 2006, which was inconsistent with her request for disability benefits. The ALJ further discussed Dr. Elgin's letter, but assigned it no weight because it only listed her diagnoses and contained no opinion or specific limitations that would assist with an RFC assessment (Tr. 315). He then gave great weight to the opinions of the state reviewing physicians, but modified the mental RFC to simple tasks and no contact with the public, based on the claimant's subjective complaints (Tr. 315). Noting

that the "paucity of treatment records tend to show" that the claimant could perform a range of light work, he ultimately concluded that she was not disabled (Tr. 316-317).

The claimant first contends that the ALJ erred by finding she could return to her past relevant work because he failed to account for the mental demands of the job of bottling line attendant. Step four has three distinct phases. The ALJ must establish the claimant's RFC, then determine the demands of her past relevant work (both physical and mental), and ultimately decide if her RFC enables her to meet those demands. *See, e. g., Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ must specify his factual findings at each phase, *see id.* at 1023, and although the ALJ may *rely on* information provided by a VE, "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform h[er] past relevant work." *Id.* at 1025. With regard to phase two, the Court finds the ALJ's questioning of the claimant at the administrative hearing and the VE's testimony about the exertional and skill levels of the jobs was sufficient to establish the physical demands of the claimant's past work, (Tr. 327-337, 348-352), but that he failed to develop the mental demands of her past relevant work. *See Frantz v. Astrue*, 509 F.3d 1299, 1304 (10th Cir. 2007) ("The ALJ's conclusory statement that '[t]he exertional and non-exertional requirements of this job are consistent with the claimant's residual functional capacity' is insufficient under *Winfrey* to discharge his duty to make findings regarding the mental demands of Ms. Frantz's past relevant work. . . . Here, there was no VE Testimony and no evidence of any kind, to establish the mental demands of [Ms.] Frantz's past relevant work and thus no evidence to support a finding that Ms. Frantz

retains the mental RFC to work as a general clerk."). Ordinarily, this would be reversible error under *Winfrey*, but here it is harmless in light of the ALJ's alternative step five findings of other jobs that existed in significant numbers that the claimant could perform. As demonstrated below, the ALJ's step five findings were proper, and thus his error became harmless. *See Martinez v. Astrue*, 316 Fed. Appx. 819, 824 (10th Cir. 2009) ("Because we conclude, as discussed in the next section, that the ALJ's step-five finding was proper, we agree with the district court that the ALJ's *Winfrey* error was harmless. Contrary to Ms. Martinez's argument, her capacity to perform the specific requirements of a past sedentary job has no bearing on her capacity to perform different sedentary jobs at step five because the ALJ made findings regarding her specific limitations for step-five purposes.").

The claimant next contends that the ALJ erred by failing to include all her limitations in a hypothetical to the VE (and thus his step five findings contain errors as well). Specifically, he asserts that the limitations should have accounted for a moderate limitation in the ability to maintain attention and concentration for extended periods, as well as a moderate limitation in her ability to respond appropriately to changes in the work setting. These are limitations that Dr. Kendall checked in Section I of her Mental RFC assessment, and which the claimant contends the ALJ erred by failing to include in his hypothetical. In fact, the ALJ gave Dr. Kendall's opinion great weight, but modified the findings to simple tasks and no contact with the public based on the subjective complaints of the claimant (Tr. 315), so that the claimant's ultimate RFC stated in relation to psychologically based factors that she could perform unskilled work (work,

which needs little or no judgment to do simple duties that can be learned on the job in a short period of time) where supervision is simple, direct and concrete, interpersonal contact with co-workers is incidental to the work performed, like assembly work, and she would have no dealings with the public (Tr. 311). The Commissioner notes that the Tenth Circuit has favorably cited the Social Security Administration's Program Operations Manual Systems (POMS), which "provides that Sections III of the MRFCA, not Section 1, is for recording a medical consultant's formal mental RFC assessment, and that adjudicators are to use the Section III narrative as the RFC Assessment[.]" *Carver v. Colvin*, 600 Fed. Appx. 616, 618-619 (10th Cir. 2015). *However*, "this does not mean that an ALJ can turn a blind eye to moderate Section I limitations. . . . Thus, if a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Carver*, 600 Fed. Appx. at 619. But here the ALJ's hypothetical (Tr. 348), to which the VE responded with the jobs of housekeeper and hand bander, was based on the same limitations as the ALJ's ultimate RFC determination (Tr. 311). The ALJ was not required to include limitations that he ultimately did not adopt. *See Roberts v. Colvin*, 2014 WL 949870, at *4 (D. Utah Mar. 11, 2014) ("Notably, however, Plaintiff does not challenge the ALJ's RFC assessment, which did not include any limitations for Plaintiff's vertigo. Because the ALJ did not include any such limitations in his RFC assessment, he was not required to include them in the hypothetical given to the VE."), *citing Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th

Cir. 2000) (The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision."). *See also Sullivan v. Colvin*, 519 Fed. Appx. 985, 989 (10th Cir. 2013) ("We have repeatedly held that while an ALJ must consider all of the evidence in the record, nothing requires the discussion of every piece of evidence."), *citing Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the Court simply cannot do. The ALJ specifically noted every medical record available in this case, *and still concluded* that she could work. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). *See also Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

The claimant's final contention is that the ALJ erred in assessing her credibility. A credibility determination is entitled to deference unless there is some indication that the

ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

The ALJ noted in his written opinion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not completely credible" (Tr. 313). He also set out the appropriate credibility factors, and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible, including: (i) that the claimant was able to live alone, including caring for pets, preparing meals, cleaning, laundry, driving, and shopping; (ii) that she had custody of her grandson and cared for her aged parents, both of which can be physically and emotionally demanding; (iii) that the claimant's medications were relatively effective in controlling her symptoms, but that she had been non-compliant, and non-compliant by choice when drinking alcohol; (iv) she reported receiving unemployment benefits after the original alleged onset date; and (v) the record contained no restrictions from her treating physicians or counselors (Tr. 315). The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*. There is no indication here that the ALJ misread the

claimant's medical evidence taken as a whole, and his determination of the claimant's credibility is therefore entitled to deference.  *See Casias*, 933 F.2d at 801.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence.  The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 28th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**